UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ARNULFO SERRANO & ABRAHAM VERA,

                                          Plaintiffs,

                -against-

THE CITY OF NEW YORK, UNDERCOVER OFFICER
# 0113, DETECTIVE FRANK ALTIERI, tax # 923499,
JOHN DOES 1 & 2,

                                          Defendants.

**COMPLAINT**

10 Civ. 8898 (NRB)

Jury Trial Demanded

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1. Plaintiffs bring this civil rights action against the City of New York and several members of the New York City Police Department ("NYPD") employed in Narcotics Borough Manhattan South ("Manhattan South Narcotics").  Plaintiff Serrano is 41 years-old, has no criminal record and has been the chef of Lunasa Restaurant in the East Village for the past seven years.  Plaintiff Vera is 56 years-old, has no criminal record and has been employed as a driver for Topacio Car Service in Brooklyn for the past 22 years.

2. Plaintiffs allege that, on April 4, 2010, in the East Village, defendants violated their rights under 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution by falsely arresting them for possession and sale of a controlled substance, using unreasonable force on them, illegally strip searching Vera, making false allegations about them to prosecutors and maliciously prosecuting them.  On June 3, 2010, the false criminal charges were dismissed on the merits upon motion of the prosecution.  Plaintiffs seek compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District, and because some or all of the defendants reside in this District.

## PARTIES

5. Plaintiff Serrano was born in Mexico and resides with his family in Brooklyn.

6. Plaintiff Vera was born in Ecuador and resides with his family in Queens.

7. The City of New York is a municipal corporation organized under the laws of the State of New York.

8. Undercover Officer # 0113, Detective Frank Altieri and John Does 1 & 2 are members of the NYPD employed in Manhattan South Narcotics. Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiffs from unconstitutional conduct. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

9. On April 3, 2010, plaintiff Serrano worked the 3:00 p.m. to 12:00 p.m. shift at Lunasa Restaurant in the East Village where he is employed as the chef.

10. On April 4, 2010, shortly after midnight, Serrano called Topacio Car Service to drive him to his home in Sunset Park, Brooklyn. Serrano took a car service rather than the train because had to be at work early the next morning to work the brunch shift.

11. Serrano's April 4 telephone call to Topacio Car Service is verified by Verizon Wireless records in Vera's possession.

12. Vera, a driver for Topacio Car Service, was assigned the ride and picked up Serrano a half of a block away from Lunasa at 7th Street and First Avenue.

13. Serrano entered the *rear* seat of the car.

14. The fact that Serrano was in the rear set is verified by a video in plaintiffs' possession.

15. At all relevant times, plaintiffs did not commit a crime, they were not wanted for a crime and no law enforcement officer observed them acting in a manner which gave rise to probable cause.

16. A short time after Vera and Serrano left the pick-up location, when the car was on St Marks Place between 1st Street and Avenue A, three members of Manhattan South Narcotics in plainclothes riding in an unmarked car pointed their guns at plaintiffs and stopped the car.

17. One of the officers who was in the car is white, the second is black and the third is Hispanic.

18. The white officer who was in the car may be defendant Detective Altieri.

19. The three officers, acting in concert, pulled plaintiffs out of the car and intentionally handcuffed them excessively tight causing pain and bruising. As a result of this use of force, plaintiffs suffered pain in their wrists for several days.

20. The officers searched plaintiffs and did not find anything illegal on them including illegal drugs.  Serrano had $56 on him.  Vera had $421 on him from collecting fares.

21. Plaintiffs were put in a police van and taken to the precinct, Police Service Area 4.

22. Inside the precinct, the Hispanic officer illegally strip searched Vera.

23. The officer ordered Vera to strip nude and open his buttocks.

24. The officer did not find anything illegal on Vera including illegal drugs.

25. The strip search of Vera was illegal because Vera had not committed a crime and because no officer had reasonable suspicion to believe that Vera was hiding illegal items under his clothes.

26. Subsequent to the strip search, plaintiffs were incarcerated in a cell.

27. While plaintiffs were confined in a cell, Detective Altieri and Undercover Officer # 0113 misrepresented in police reports that plaintiffs had possessed and sold cocaine to Carlos Luna, who was arrested at or about the same time as plaintiffs.

28. Specifically, the two defendants fabricated a story that Luna approached Vera's car, that Serrano was sitting in the *front* passenger seat and that Serrano and Vera passed an unidentified "small object" to Luna.

29. The other officers involved in the arrests of plaintiffs knew that Detective Altieri and Undercover Officer # 0113 were creating police reports containing false allegations about plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to a supervisor.

30. At approximately 9:00 a.m., plaintiffs were taken to Manhattan Central Booking.

31. Plaintiffs were held in cells in Manhattan Central Booking which were severely overcrowded and dangerously unsanitary. The toilets were covered in feces and urine and other types of human discharge and there were no beds or cots for plaintiffs and the other detainees to sleep on.

32. While plaintiffs were confined in Manhattan Central Booking, Detective Altieri misrepresented to the New York County District Attorney's Office (or to the Office of the Special Narcotics Prosecutor) that plaintiffs had possessed and sold cocaine to Carlos Luna.

33. The other officers involved in the arrests of plaintiffs knew that Detective Altieri was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to the District Attorney's Office.

34. Detective Altieri commenced the bogus felony prosecution against plaintiffs by swearing to the accuracy of a criminal court complaint that contained the false allegations.

35. Defendants' purpose in commencing a bogus prosecution against plaintiffs was to have plaintiffs convicted of and punished for crimes they did not commit, to obtain overtime compensation and to improve Manhattan South Narcotics' arrest statistics.

36. On April 5, 2010, in the afternoon, plaintiffs were arraigned in Criminal Court, New York County, on felony narcotics charges.

37. The presiding judge released plaintiffs on their own recognizance and ordered them to return to court at a later date.

38. After his release, Serrano retained attorney Daniel Arshack to defend him at a cost of $9,000.

39. Plaintiffs made three court appearances after their arraignment, April 9, April 22 and June 3.

40. On June 3, 2010, the prosecution, after plaintiffs' attorneys provided incontrovertible proof that plaintiffs were innocent, dismissed the charges filed against plaintiffs.

41. Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs were incarcerated from approximately 12:30 a.m. on April 4 to the afternoon of April 5, were deprived of their liberty during their incarceration and while the criminal charges were pending, and suffered emotional distress, mental anguish, fear, anxiety, embarrassment, pain and injuries, and damage to their reputations. Moreover, Serrano spent $9,000 for a criminal defense attorney.

## FIRST CLAIM
### (FALSE ARREST)

42. Plaintiffs repeat the foregoing allegations.

43. At all relevant times, including April 4, 2010, plaintiffs did not commit a crime or violation, they were not wanted for a crime and no law enforcement officer observed them acting in a manner which gave rise to probable cause.

44. Despite plaintiffs' innocence, the defendants arrested plaintiffs.

45. Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for false arrest.

## SECOND CLAIM
### (UNREASONABLE FORCE)

46. Plaintiffs repeat the foregoing allegations.

47. Defendants' use of force upon plaintiffs in the form of excessively tight handcuffs was objectively unreasonable and caused plaintiffs pain and injury.

48. Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for using unreasonable force.

## THIRD CLAIM

### (ILLEGAL STRIP SEARCH)

49. Plaintiffs repeat the foregoing allegations.

50. Defendants' strip search of Vera or their failure to intervene was illegal because Vera had not committed a crime and because no officer had reasonable suspicion to believe that Vera was hiding illegal items under his clothes.

51. Accordingly, defendants are liable to plaintiff Vera under the Fourth Amendment for illegally strip searching him.

## FOURTH CLAIM

### (FABRICATION OF EVIDENCE AND DENIAL OF A FAIR TRIAL)

52. Plaintiffs repeat the foregoing allegations.

53. Detective Altieri misrepresented to prosecutors that plaintiffs had committed a felony narcotics offense.

54. The other officers involved in plaintiffs' arrests knew that Altieri was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to prosecutors.

55. Defendants' false allegations resulted in plaintiffs being deprived of liberty because they were held in jail until their arraignments and were required to appear in court on several occasions subsequent to their arraignments.

56. Accordingly, defendants are liable to plaintiffs under the Sixth Amendment for fabrication of evidence and denying plaintiffs a fair trial.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION)

57. Plaintiffs repeat the foregoing allegations.

58. Defendants, through their affirmative actions or failure to intervene, were all personally involved in commencing a bogus prosecution against plaintiffs which ultimately terminated in plaintiffs' favor.

59. Defendants' motivation was to have plaintiffs convicted of and punished for crimes they did not commit, to obtain overtime compensation and to improve Manhattan South Narcotics' arrest statistics.

60. The prosecution deprived plaintiffs of liberty because plaintiffs were required to appear in court on several occasions.

61. Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for malicious prosecution.

## SIXTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

62. Plaintiffs repeat the foregoing allegations.

63. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

64. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

65. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of Manhattan South Narcotics are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

66. Upon information and belief, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline, and monitor the defendants and improperly retained and utilized them.

67. The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

  a. Compensatory damages in an amount to be determined by a jury;

  b. Punitive damages in an amount to be determined by a jury;

  c. Attorney's fees and costs;

  d. Such other and further relief as the Court may deem just and proper.

DATED:   November 24, 2010
         Brooklyn, New York

/s/
_____
RICHARD J. CARDINALE
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-9391